Adrian R. Bacon (SBN 280332)
**THE LAW OFFICES OF
TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Telephone: (818) 646-5690
Facsimile: (866) 633-0228
Email: abacon@toddflaw.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DEBRA COE and ALISHA WILLIAMS, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

LOANDEPOT, INC.

      Defendant.

**CASE NO.: 8:24-cv-211**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Debra Coe and Alisha Williams, (herein "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, brings this Class Action Complaint against LoanDepot, Inc. ("loanDepot" or "Defendant"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to each Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.     Plaintiffs and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted loanDepot with sensitive personally identifiable information ("PII")[1] that was subsequently exposed in a data breach,

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

which loanDepot publicly disclosed on January 08, 2024 (the "Data Breach" or the "Breach").[2]

2.    Plaintiffs' claims arise from Defendant's failure to properly secure and safeguard PII that was entrusted to them, and their accompanying responsibility to store and transfer that information. At least 16,600,000 million consumers information were affected by the Data Breach, in which sensitive personal information was accessed by an unauthorized third party.[3]

3.    loanDepot is the nation's fifth largest retail mortgage lender and second largest nonbank retail originator, servicing approximately 27,000 customers per month.[4]

4.    Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiffs and the Class, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access.

5.    On or around January 8, 2024, Defendant became aware of a cybersecurity  incident affecting their company's systems.[5] loanDepot first publicly disclosed the Data Breach in an 8-k filing with the Securities Exchange Commission ("SEC").[6] The company stated that they launched an investigation and began the process of notifying applicable regulators and law enforcement, in response to the cybersecurity incident.[7]

---

[2] *Form 8-K*, UNITED STATES SECURITIES AND EXCHANGE COMMISSION (Jan. 4, 2024) https://d18rn0p25nwr6d.cloudfront.net/CIK-0001831631/446c437f-153f-425d-adc6-bf37155d6e91.pdf (last visited January 25, 2024).
[3] *Id.*
[4] Kennedy Edgerton and Dawn Nici, *Cyberattack Hobbles LoanDepot; What To Do If Your Mortgage Company Is Hacked*, Forbes (Jan. 11, 2024) https://www.forbes.com/advisor/mortgages/loan-depot-mortgage-attack-data-breach/ (last visited January 25, 2024).
[5] *Form 8-K/A*, UNITED STATES SECURITIES AND EXCHANGE COMMISSION (Jan. 4, 2024) https://d18rn0p25nwr6d.cloudfront.net/CIK-0001831631/80bb5ce4-2f0e-49d6-b1a1-bd5aa864f4d1.pdf (last visited January 25, 2024).
[6] *Id.*
[7] *Id.*

6.     On January 22, 2024, loanDepot filed an amended 8-k filing with the SEC in which the company disclosed that their internal investigation determined that the Data Breach impacted 16.6 million customers, exposing sensitive information.[8]

7.     Plaintiffs' claim arises from Defendant's failure to safeguard PII provided by and belonging to their customers and failure to provide timely notice of the Data Breach.

8.     Defendant failed to take precautions designed to keep their customers' PII secure.

9.     Defendant owed Plaintiffs and Class Members a duty to take all reasonable and necessary measures to keep the PII they collected safe and secure from unauthorized access.  Defendant solicited, collected, used, and derived a benefit from the PII, yet breached their duty by failing to implement or maintain adequate security practices.

10.     Defendant admits that information in their system was accessed by unauthorized individuals, though they have provided little information regarding how the data breach occurred.

11.     The sensitive nature of the data exposed through the Data Breach signifies that Plaintiffs and Class Members have suffered irreparable harm. Plaintiffs and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

12.     Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiffs and members of the Class, causing the exposure of PII for Plaintiffs and members of the Class.

---

[8] *Id.*

13.     As a result of the Defendant's inadequate digital security and notice process, Plaintiffs' and Class Members' PII was exposed to criminals. Plaintiffs and the Class have suffered and will continue to suffer injuries including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiffs and members of the Class; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected PII using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiffs and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

15.     Plaintiffs bring this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence per se; unjust enrichment, and breach of implied covenant of good faith fair dealing.

16.     Plaintiffs seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class Members.

18. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains their principal place of business in Irvine, California.

19. Venue is proper in these District under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

20. Plaintiff Debra Coe is a citizen of Illinois and resides in Northbrook, Illinois. Plaintiff applied for and took out a loan from loanDepot in or around 2016. Plaintiff continued paying on that loan through about or around January of 2022. As a consequence of the Data Breach, Plaintiff has been forced to, and will continue to, invest significant time monitoring her accounts to detect and reduce the consequences of likely identity fraud.  As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm. Plaintiff Coe obtained her mortgage in Illinois. Plaintiff would not have used loanDepot had she known that it would expose her sensitive PII.

21. Plaintiff Alisha Williams is a citizen of Louisiana and resides in Ferriday, Louisiana. Plaintiff Williams applied for and took out a loan from loanDepot in or around 2021 and continues paying on that loan to this day. As a consequence of the Data Breach, Plaintiff has been forced to and will continue to invest significant time monitoring her accounts to detect and reduce the consequences of likely identity fraud.  As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm. Plaintiff Williams obtained her mortgage in Louisiana. Plaintiff would not have used loanDepot had she known that it would expose her sensitive PII.

22. Defendant loanDepot is a Delaware corporation, with its principle place of business located in Irvine, California and maintaining a physical presence through their businesses and services in California and Florida. loanDepot is the

fifth-largest retail mortgage lender and the second-largest nonbank retail originator in the United States, serving more than 27,000 customers per month.[9] loanDepot offers a range of mortgage options, including adjustable-rate mortgages, fixed-rate mortgages, FHA loans, jumbo loans, VA loans, and 203k loans. loanDepot employs more than 6,000 people[10] and generates approximately $698 million in annual revenue.[11]

23.     Defendant collected and continues to collect the PII of their customers and clients throughout their usual course of business operations. By obtaining, collecting, using, and deriving benefit from Plaintiffs' and Class's PII, Defendant assumed legal and equitable duties to those persons, and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from unauthorized disclosure and/or criminal cyber activity.

## FACTUAL BACKGROUND

### A.     Background on Defendant

24.     Defendant loanDepot is a retail mortgage lender, offering consumers a range of mortgage options, including adjustable-rate mortgages, fixed-rate mortgages, FHA loans, jumbo loans, VA loans, and 203k loans. loanDepot is the fifth-largest retail mortgage lender and the second-largest nonbank retail originator in the United States, serving more than 27,000 customers per month.[12]

25.     In the ordinary course of their business practices, Defendant stores, maintains, and uses an individuals' PII, which includes Plaintiffs' and Class Members', including but not limited to information such as: full names; addresses; Social Security numbers; and loan numbers.

---

[9] *LoanDepot Confirms Data Breach Affecting 16.6 Million Consumers in SEC Filing*, JDSUPRA https://www.jdsupra.com/legalnews/loandepot-confirms-data-breach-6668835/ (last visited January 25, 2024).

[10] *About Us*, LOANDEPOT https://www.loandepot.com/about (last visited January 25, 2024).

[11] *LoanDepot Confirms Data Breach Affecting 16.6 Million Consumers in SEC Filing*, JDSUPRA https://www.jdsupra.com/legalnews/loandepot-confirms-data-breach-6668835/ (last visited January 25, 2024).

[12] *Id.*

26.    Upon information and belief, Defendant made promises and representations to their customers, including Plaintiffs and Class Members, that the PII collected from them as a condition of obtaining a loan would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

27.    Plaintiffs and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

28.    As a result of collecting and storing the PII of Plaintiffs and Class Members for their own financial benefit,  Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiffs' and the Class Members' PII from disclosure to third parties.

An Important Update.

loanDepot is experiencing a cyber incident that has prompted us to take certain systems offline while we respond to the matter. We are working diligently to return to normal business operations as soon as possible. Recurring automatic payments are processing as expected, but there may be a temporary delay in viewing the posted payment in your payment history. If you are seeking to make a payment, you may do so through our contact center by speaking with an agent at 866-258-6572 from 7 am CT to 7 pm CT Monday through Friday, and 8 am CT to 5 pm CT on Saturday. You may also mail your payment with your loan number to the address on your statement. We apologize for any inconvenience.

**B.     The Data Breach**

29.     On or around January 8, 2024, Defendant became aware of a cybersecurity    incident affecting their company's systems.[13] loanDepot first publicly disclosed the Data Breach in an 8-k filing with the Securities Exchange Commission ("SEC").[14] The company stated that they launched an investigation and began the process of notifying applicable regulators and law enforcement, in response to the cybersecurity incident.[15]

30.     Immediately following the Data Breach, loanDepot's website, including its customer portals, appeared to be non-functional, and the  error message shown below appeared on loanDepot's customer login page, asking customers seeking to make a payment to call or mail in their payment instead.[16]

31.     On January 22, 2024, loanDepot filed an amended 8-k filing with the SEC in which the company disclosed that their internal investigation determined that the data breach impacted 16.6 million    customers, exposing sensitive information.[17]

32.     While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive personal information of Plaintiffs and Class Members.

33.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

---

[13] *Form 8-K/A*, UNITED STATES SECURITIES AND EXCHANGE COMMISSION (Jan. 4, 2024) https://d18rn0p25nwr6d.cloudfront.net/CIK-0001831631/80bb5ce4-2f0e-49d6-b1a1-bd5aa864f4d1.pdf (last visited January 25, 2024).
[14] *Id*.
[15] *Id*.
[16] Zack Whittaker, *LoanDepot hit by suspected ransomware attack*, TECHCRUNCH (Jan. 8, 2024) https://techcrunch.com/2024/01/08/loandepot-outage-suspected-ransomware-attack/ (last visited January 25, 2024).
[17] *Id*.

**C.    Defendant's Failure to Prevent, Identify and Timely Report the Data Breach.**

34.    Defendant admits that unauthorized third persons accessed their network systems in order to obtain sensitive information about their current and former customers.

35.    Defendant failed to take adequate measures to protect their computer systems against unauthorized access.

36.    Defendant was not only aware of the importance of protecting the PII that it maintains, as alleged, it promoted their capability to do so, as evident from their  Privacy Policy.[18] In their Privacy Policy, loanDepot includes the following representations:

**Safeguarding Personally Identifiable Information**

We have adopted policies and procedures designed to protect your personally identifiable information from unauthorized use or disclosure.

We have implemented physical, electronic, and procedural safeguards to maintain confidentiality and integrity of the personal information in our possession and to guard against unauthorized access. These include among other things, procedures for controlling access to your files, building security programs and information technology security measures such as the use of passwords, firewalls, virus prevention and use detection software.

We continue to assess new technology as it becomes available and to upgrade our physical and electronic security systems as appropriate. Our policy is to permit employees to access your personal information only if they have a business purpose for using such information, such as administering, providing or developing our products or services.

Our policy, which governs the conduct of all of our employees, requires all employees to safeguard personally identifiable information about the consumers and customers we serve or have served in the past.

**loanDepot Security Policy**

loanDepot takes steps to safeguard your personal and sensitive information through industry standard physical, electronic, and operational policies and practices. All data that is considered highly confidential data can only be read or written through defined service

---

[18] See *Fidelity National Financial Privacy Notice*, FIDELITY NATIONAL FINANCIAL https://fnf.com/privacy-notice (Last visited January 25, 2024).

access points, the use of which is password-protected. The physical security of the data is achieved through a combination of network firewalls and servers with tested operating systems, all housed in a secure facility. Access to the system, both physical and electronic, is controlled and sanctioned by a high-ranking manager.

## Information We Collect

### Consumer and Customers

We collect information about you to help us serve your financial, real estate, insurance, credit, and homeownership-related needs; to provide you with quality products and services; and to fulfill legal and regulatory requirements. We consider non-public information about you in our possession to be personally identifiable information, even if you cease to be a customer. The personally identifiable information we collect about you may include:

- Identifying information, such as your name, age, address, phone number and social security number
- Employment information
- Contact information (such as first and last name, mailing or property address, phone number, email address)
- Account access information, such as username and password
- Demographic information (such as date of birth, gender, marital status, ethnicity, race)
- Social security, driver's license, passport, and other government identification numbers
- Loan account information (such as loan number)
- Bank account and credit/debit card numbers
- Other personal information needed from you to provide real estate-related, loan-related, insurance-related, credit-related, and homeownership-related services to you
- Information for fraud detection and prevention
- Financial information such as your income, assets and liabilities, as well as information about your savings, investments, insurance and business. [19]

37.    The PII that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

---

[19] *Privacy Policy*, LOANDEPOT https://www.loandepot.com/privacypolicy (last visited January 25, 2024).

38.     Moreover, loanDepot was the victim of another cyber-attack less than two years ago in August 2022, in which an unauthorized third party gained access to their IT network.[20] Accordingly, loanDepot is acutely aware that the information they collect and store from customers, is precisely the type of information susceptible to cyberattacks.

39.     Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[21] Defendant failed to disclose that their systems and security practices were inadequate to reasonably safeguard their customer's sensitive personal information.

40.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[22]  Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.

41.     Despite this guidance, Defendant delayed the notification of the Data Breach. Based on loanDepot's SEC filing, the Data Breach is believed to have occurred on or around January 8, 2023, yet loanDepot, by their admission, has yet to inform all customers impacted by the Data Breach.[23]

**D.     The Harm Caused by the Data Breach Now and Going Forward.**

42.     Victims of data breaches are susceptible to becoming victims of identity theft.

43.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. §

---

[20] *Sample Data Breach Notice Letter - loanDepot*, MASSACHUSETTS OFFICE OF THE ATTORNEY GENERAL https://www.mass.gov/doc/assigned-data-breach-number-29545-loandepot-inc/download (last visited January 25, 2024).

[21] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited January 25, 2024).

[22] *Id.*

[23] *Form 8-K/A*, UNITED STATES SECURITIES AND EXCHANGE COMMISSION (Jan. 4, 2024) https://d18rn0p25nwr6d.cloudfront.net/CIK-0001831631/80bb5ce4-2f0e-49d6-b1a1-bd5aa864f4d1.pdf (last visited January 25, 2024).

248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[24]

44.     The type of data that was accessed and compromised here – such as, full name and Social Security number – can be used to perpetrate fraud and identity theft.  Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

45.     Plaintiffs and Class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important PII were compromised in the Data Breach.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

46.     Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

47.     When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[25]

48.     For example, when the U.S. Department of Justice announced their seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity.  Other marketplaces, similar to the now-defunct

---

[24] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness  (last visited January 25, 2024).

[25] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE, Dec. 28, 2020, *available at:* https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited January 25, 2024).

AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is their pervasiveness.  As data breaches in the news continue to reveal, PII about employees, customers and the public are housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[26]

49.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[27] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[28]

50.    A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card.  An individual cannot obtain a new Social Security number without significant work.   Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number.  Even then, however, obtaining a new Social Security number may not suffice.  According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[29]

---

[26] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR, April 3, 2018, *available at:* https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/  (last visited January 25, 2024).
[27] *Id.*
[28] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft  (last visited January 25, 2024).
[29] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft  (last visited January 25, 2024).

51.     The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[30]

52.     According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[31]

53.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[32] Defendant did not rapidly report to Plaintiffs and Class Members that their PII had been stolen.

54.     As a result of the Data Breach, the PII of Plaintiffs and Class Members have been exposed to criminals for misuse. The injuries suffered by Plaintiffs and Class Members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in

---

[30] *Experts advise compliance not same as security*, RELIAS MEDIA https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (Last visited January 25, 2024).

[31] *2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (Last visited January 25, 2024).

[32] *Id.*

the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII.

55.    In addition to a remedy for economic harm, Plaintiffs and Class Members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

56.    Defendant disregarded the rights of Plaintiffs and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class Members' PII; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

57.    The actual and adverse effects to Plaintiffs and Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiffs and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes

and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiffs and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ACTION ALLEGATIONS

58.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach publicly announced by Defendant in January 2024 (the "Class").

59.    Plaintiffs also seek certification of a California Subclass, defined as follows:

> All California residents whose personal information was compromised in the Data Breach publicly announced by Defendant in January of 2024 (the "California Subclass").

60.    Plaintiffs also seek certification of a Florida Subclass, defined as follows:

> All Florida residents whose personal information was compromised in the Data Breach publicly announced by Defendant in January of 2024 (the "Florida Subclass").

61.    Specifically excluded from the Class are Defendant, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

62.    Plaintiffs reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

63.    This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

64.     <u>Numerosity (Rule 23(a)(1))</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiffs estimate that the Class is comprised of millions of Class Members. The Class is sufficiently numerous to warrant certification.

65.     <u>Typicality of Claims (Rule 23(a)(3))</u>: Plaintiffs' claims are typical of those of other Class Members because they all had their PII compromised as a result of the Data Breach.  Plaintiffs are members of the Class, and their claims are typical of the claims of the members of the Class.  The harm suffered by Plaintiffs is similar to that suffered by all other Class Members that was caused by the same misconduct by Defendant.

66.     <u>Adequacy of Representation (Rule 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have no interests antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

67.     <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members is relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

68.     <u>Predominant Common Questions (Rule 23(a)(2))</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

   a.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to

the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Class Member's PII was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiffs' and Class Members' PII;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiffs' and Class Members' privacy;

g. Whether Defendant's conduct violated the statutes as set forth herein;

h. Whether Defendant took sufficient steps to secure their customers' PII;

i. Whether Defendant was unjustly enriched;

j. The nature of relief, including damages and equitable relief, to which Plaintiffs and Class Members are entitled.

69. Information concerning Defendant's policies is available from Defendant's records.

70. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude their maintenance as a class action.

71. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

72. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

73.     Given that Defendant had not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiffs and All Class Members)**

74.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 24 through 57 as though fully set forth herein.

75.     Plaintiffs bring this claim individually and on behalf of the Class Members.

76.     Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

77.     Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

78.     Defendant had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII within their possession was compromised and precisely the type(s) of information that were compromised.

79.     Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected their customers' PII.

80.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and their

customers.  Defendant was in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

81.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

82.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII.

83.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

   b.  Failing to adequately monitor the security of their networks and systems; and

   c.  Failing to periodically ensure that their computer systems and networks had plans in place to maintain reasonable data security safeguards.

84.    Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendant's possession.

85.    Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

86.    Defendant, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiffs and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

87.   Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiffs' and Class Member's PII. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the personal customer information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their networks' vulnerabilities; and failed to implement policies to correct security issues.

88.   Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

89.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiffs' and Class Members' PII would result in injury to Plaintiffs and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

90.   It was foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in injuries to Plaintiffs and Class Members.

91.   Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

92.   But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiffs and Class Members, their PII would not have been compromised.

93.   As a result of Defendant's failure to timely notify Plaintiffs and Class Members that their PII had been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

94.   As a result of Defendant's negligence and breach of duties, Plaintiffs

and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiffs and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and All Class Members)**

95.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 24 through 57 as though fully set forth herein.

96.    Plaintiffs and the Class provided and entrusted their PII to Defendant. Plaintiffs and the Class provided their PII to Defendant as part of Defendant's regular business practices.

97.    In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the PII of Plaintiffs and Class Members in their possession was secure.

98.    Pursuant to these implied contracts, Plaintiffs and Class Members provided Defendant with their PII in order for Defendant to provide services, for which Defendant is compensated.  In exchange, Defendant agreed to, among other

things, and Plaintiffs understood that Defendant would: (1) provide services to Plaintiffs and Class Members; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class Members' PII; and (3) protect Plaintiffs' and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

99.     Implied in these exchanges was a promise by Defendant to ensure the PII of Plaintiffs and Class Members in their possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiffs' and Class Members' PII.

100.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiffs' and Class Members' PII to be accessed in the Data Breach.

101.    Indeed, implicit in the agreement between Defendant and their customers was the obligation that both parties would maintain information confidentially and securely.

102.    These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiffs and Class Members would provide their PII in exchange for services by Defendant. These agreements were made by Plaintiffs and Class Members as Defendant customers.

103.    When the parties entered into an agreement, mutual assent occurred. Plaintiffs and Class Members would not have disclosed their PII to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiffs' and Class Members' PII if it did not intend to provide Plaintiffs and Class Members with their services.

104.    Defendant was therefore required to reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure and/or use.

105.    Plaintiffs and Class Members accepted Defendant's offer of services

and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

106.   Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII.

107.   Defendant breached the implied contracts with Plaintiffs and Class Members by failing to reasonably safeguard and protect Plaintiffs' and Class Members' PII.

108.   Defendant's failure to implement adequate measures to protect the PII of Plaintiffs and Class Members violated the purpose of the agreement between the parties.

109.   Instead of spending adequate financial resources to safeguard Plaintiffs' and Class Members' PII, which Plaintiffs and Class Members were required to provide to Defendant, Defendant's instead used that money for other purposes, thereby breaching their implied contracts it had with Plaintiffs and Class Members.

110.   As a proximate and direct result of Defendant's breaches of their implied contracts with Plaintiffs and Class Members, Plaintiffs and the Class Members suffered damages as described in detail above.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and All Class Members)**

111.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 24 through 57 as though fully set forth herein.

112.   Plaintiffs and Class Members conferred a benefit upon Defendant by using Defendant's services.

113.   Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs. Defendant also benefited from the receipt of Plaintiffs' PII,

as this was used for Defendant to administer their services to Plaintiffs and the Class.

114.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' services and their PII because Defendant failed to adequately protect their PII. Plaintiffs' and the proposed Class would not have provided their PII to Defendant or utilized their services had they known Defendant would not adequately protect their PII.

115.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs  all unlawful or inequitable proceeds received by it because of their misconduct and Data Breach.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and All Class Members)**

116.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above in paragraphs 1 through 16 and paragraphs 24 through 57 as though fully set forth herein.

117.   Defendant has violated the covenant of good faith and fair dealing by their conduct alleged herein.

118.   Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

119.   Plaintiffs and Class Members have complied with and performed all, or substantially all, of the obligations imposed on their conditions of their loans with Defendant.

120.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard their customers PII, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members and continued acceptance of PII and storage

of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

121.   Defendant acted in bad faith and/or with malicious motive in denying Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them substantial injury in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)   For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representatives of the Class and his counsel as Class Counsel;

(b)   For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)   For damages in amounts to be determined by the Court and/or jury;

(e)   An award of statutory damages or penalties to the extent available;

(f)   For pre-judgment interest on all amounts awarded;

(g)   For an order of restitution and all other forms of monetary relief; and

(h)   Such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: January 31, 2024                    Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN**

By: */s/ Adrian R. Bacon*
　　Adrian R. Bacon, Esq. (SBN 280332)
　　21031 Ventura Blvd, Suite 340
　　Woodland Hills, CA 91364
　　Tel.: (323) 306-4234
　　Facsimile: (866) 633-0228
　　Email: abacon@toddflaw.com

　　Mark S. Reich*
　　Courtney E. Maccarone*
　　**LEVI & KORSINSKY, LLP**
　　33 Whitehall Street, 17th Floor
　　New York, NY 10004
　　Telephone: (212) 363-7500
　　Facsimile: (212) 363-7171
　　Email: mreich@zlk.com
　　Email: cmaccarone@zlk.com

　　*Counsel for Plaintiffs*

　　**pro hac vice* forthcoming